FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 31 2016 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

ABEL ANTONIO ALVARENGA VASQUEZ,

          Plaintiff,

    - against -

THE INCORPORATED VILLAGE OF HEMPSTEAD,
HEMPSTEAD POLICE OFFICERS WILLIAM M. FALK,
ADAM WADE, MATTHEW DREW, TRACY TROY
AND JOHN DOES 1-5,

         Defendants.

--------------------------------------------------------------------------x

**CV-16 2725**

Docket No.:

**COMPLAINT**

**BIANCO, J.**

**SHIELDS, M.J.**

**JURY TRIAL
DEMANDED**

   Plaintiff, ABEL ANTONIO ALVARENGA VASQUEZ, by and through his attorneys ANTHONY M. GRANDINETTE & JOHN ANDREW MULLAN, states the following:

## INTRODUCTORY STATEMENTS

  1.  This is an action for damages sustained by Abel Antonio Alvarenga Vasquez, a resident of the United States, on March 5, 2015, against the above-named defendants for various State and Federal constitutional and civil rights violations, and New York State common law torts, including but not limited to false arrest, false imprisonment, malicious prosecution, and assault and battery, committed under color of law, the excessive use of force, Brady and Giglio violations, conspiracy, and for due process violations resulting in the depravation of the constitutional rights of its citizens.

## JURISDICTION AND VENUE

  2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Due Process, and the Constitution and laws of the State of New York.

  3.  Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 2202.

  4.  Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendant New York State law claims pursuant to 28 U.S.C. § 1367.

  5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

1

## PARTIES

6.     Plaintiff, ABEL ANTONIO ALVARENGA VASQUEZ ("Vasquez"), was a legal resident of Hempstead, County of Nassau, State of New York, and at all times relevant to the allegations of this complaint did so reside.

7.     Defendant THE INCORPORATED VILLAGE OF HEMPSTEAD ("Village of Hempstead") is an Incorporated Village within the State of New York and the employer of its own police department, and at all relevant times, it employed defendants HEMPSTEAD POLICE OFFICERS WILLIAM M. FALK, ADAM WADE, MATTHEW DREW, TRACY TROY AND JOHN DOES 1-5.

8.     Defendant POLICE OFFICER WILLIAM M. FALK ("PO Falk"), was at all relevant times herein an employee of the Village of Hempstead and the Hempstead Police Department, and at all relevant times herein acted under color of State law and within the scope of his employment and/or in his individual capacity. PO Falk is being sued in his individual and official capacities.

9.     Defendant POLICE OFFICER MATTHEW DREW ("PO Drew"), was at all relevant times herein an employee of the Village of Hempstead and the Hempstead Police Department, and at all relevant times herein acted under color of State law and within the scope of his employment and/or in his individual capacity. PO Drew is being sued in his individual and official capacities.

10.    Defendant POLICE OFFICER ADAM WADE ("PO Wade"), was at all relevant times herein an employee of the Village of Hempstead and the Hempstead Police Department, and at all relevant times herein acted under color of State law and within the scope of his employment and/or in his individual capacity. PO Wade is being sued in his individual and official capacities.

11.    Defendant POLICE OFFICER TRACY TROY ("PO Troy"), was at all relevant times herein an employee of the Village of Hempstead and the Hempstead Police Department, and at all relevant times herein acted under color of State law and within the scope of his employment and/or in his individual capacity. PO Troy is being sued in his individual and official capacities.

12.    Defendants JOHN DOES 1-5, were police officers and/or detectives employed by the Hempstead Police Department whose identities are not yet known to Plaintiff at this time but are known to Defendants, who at all times relevant herein acted under color of State law and within the scope of their employment and/or in their individual capacities. Defendant JOHN DOES are being sued in their individual and official capacities. Should Plaintiff learn during the course of discovery of additional conduct committed by the John Doe defendants which give rise to liability, Plaintiff is placing Defendants on notice that he will seek to amend the Complaint accordingly.

## NOTICE OF CLAIM

13.   Plaintiff filed a timely Notice of Claim against the Incorporated Village of Hempstead (and Hempstead Police Department, Officers Falk, Wade, Drew and Troy), in compliance with New York General Municipal Law § 50. *See* Exhibit A.

14.   At least thirty days have elapsed since the service of said Notice of Claim and The Incorporated Village of Hempstead and the Hempstead Police Department have neglected or refused to adjust or pay the claims.

15.   Plaintiff was examined pursuant to GML § 50-h prior to commencing this action.

16.   This action has been commenced within one year and ninety days after the incident upon which these claims arise.

## FACTUAL AND GENERAL ALLEGATIONS

17.   On March 4, 2015, Vasquez was 36 years of age, and had been living with his domestic partner, Judith Carranfa and their two-and-a-half year old daughter, Giselle, at 19 Garden City Blvd, in West Hempstead, New York.

18.   Vasquez does not speak or understand English well.

19.   Vasquez worked as a landscaper, and had been employed in that capacity by the same company for the preceding ten years.

20.   Vasquez's employment was seasonal. He typically worked as a landscaper each year from March 15 through December 15, and did not work over the harshest winter months. Therefore on Wednesday, March 4, 2015, Vasquez was not working, nor was he scheduled to work on Thursday, March 5, 2015.

21.   On Wednesday, March 4, Vasquez was invited to his cousin's home for dinner. Vasquez met with his cousin, Odilio, and several friends, Zida, Lindolofo and Francisco Garcia ("Garcia"), at approximately 7 PM. The group had dinner and some drinks over the span of approximately four hours.

22.   Because it was a Wednesday evening, and Odilio, the host, had work the next day, Vasquez and Garcia left at approximately 11 PM. They decided to go out to enjoy a game of pool. They called a cab, and arrived at Contracho's, a bar/restaurant on Hempstead Turnpike in West Hempstead, at approximately 11:30 PM. The two men enjoyed each other's company, played pool, and left at approximately 12:30 AM. While at Contracho's, Vasquez had a twelve-ounce Corona and a one-ounce shot of tequila.

23.   The two friends walked from Contracho's to El Tucanaso, a night club located within a small strip mall, at 5 Front Street in Hempstead. They remained at the club from approximately

1:30-4:00 AM, three and a half hours. During that timeframe, Vasquez consumed three more twelve-ounce Coronas. Plaintiff concedes that he was legally intoxicated (.08% of alcohol by volume), at approximately 4 AM on March 5, 2015.

24.   The night club played music which was particularly loud, making it difficult to converse in natural conversational tones.

25.   At approximately 3:45 AM, Garcia was assaulted inside the club, which resulted in injuries requiring medical attention. The fight was broken by bouncers, employees of the club who physically escorted Garcia out of the club.

26.   Vasquesz exited the club a short time later, unaware of what had happened to his friend. He observed Garcia bleeding and in need of medical assistance. Vasquez was uncertain who had assaulted Garcia, so naturally, he asked one of the bouncers who was outside the club at the time.

27.   The bouncer told Vasquez he did not know who assaulted Garcia, a claim Vasquez believed to be suspect.

28.   Shortly thereafter, PO Falk arrived at the scene, followed by PO Wade, PO Drew, and PO Troy. According to PO Falk, he and his colleagues had planned to meet at that location to get food from the delicatessen.

29.   PO Falk, the first to arrive, noticed Garcia, who was bleeding from the face. Falk acknowledged that if Garcia sustained these injuries at the hands of another, the injuries constituted assault-level injuries under the New York State Penal Law.

30.   Despite the severity of the injuries to Garcia, Defendants failed to conduct any meaningful investigation into how Garcia was injured.

31.   Skeptical of the bouncers' claims that they did not know how Garcia was injured, Vasquez began video-recording the bouncers who were talking to Defendants concerning the incident, hoping he could capture the identities of the bouncers, if they were ultimately involved, or obtain some information as to who, if anyone, hurt his friend.

32.   Vasquez video-recorded the bouncers on his cell phone, and given that they were speaking with Defendants, naturally captured Defendants' images as well. Vasquez made no attempt to, nor did he, conceal his conduct.

33.   Only after Vasquez began video-recording was he apparently asked to leave the scene by PO Troy. PO Troy told one of the Spanish-speaking bouncers, in English, "[t]ell him he's gotta go, he's gotta go." However almost immediately after uttering those words, PO Troy stated "tell him [Vasquez] he can videotape all he wants," giving Vasquez express permission to remain there and video-record Defendants. Therefore Vasquez remained and video-recorded the bouncers and Defendants, in PO Troy's presence, for approximately two and a half minutes, without PO Troy directing Vasquez to leave the scene.

4

34.    PO Falk was captured on the video-recording telling one of the bouncers, in sum and substance, to 'tell Garcia that they had an ambulance coming for him.' The video-recording then captured the second bouncer giving an explanation to PO Falk as to how Garcia was hurt—he seemed to suggest Garcia was dancing and simply fell on the dance floor. In response, Vasquez is heard saying "yeah right!" in response.

35.    PO Falk was upset by Vasquez's video-recording. Therefore without a lawful basis for doing so, PO Falk stated, in English, that "he's gotta go he's gotta go," referring to Vasquez.

36.    Thereafter, one of the two bouncers attempted to take Vasquez's cell phone from his person. The two men struggled over the phone in PO Falk's presence, who, rather than telling the bouncer to stop, and without any probable cause or reasonable belief that Vasquez committed a crime, told Vasquez that he was going to be arrested.

37.    Vasquez successfully secured his cell phone from the bouncer, but fearful of him, retreated from his aggressor, while telling him "I got you, I got you mother fucker," referring to capturing the bouncer on the video-recording. Vasquez then ran in the opposite direction from the bouncer.

38.    Defendants pursued Vasquez, and in a completely unnecessary and disturbing use of excessive force, as seen on the video-recording, PO Falk, in PO Wade's immediate presence, physically lifted Vasquez off the ground and body-slammed him into the driver's side door of a parked car, rupturing Vasquez's colon by forcibly slamming his body into the driver's side mirror. As heard on the video-recording, Vasquez began moaning in agony, however despite the fact that Vasquez was clearly hurt, PO Falk and PO Wade mocked him, stating, "[w]e got you."

39.    Vasquez, who was outnumbered, unarmed, and defenseless, was not resisting.

40.    Despite that fact, with Vasquez moaning in agony, PO Falk and PO Wade leaned their body weight into Vasquez's back, thrusting his abdomen further into the mirror, intent on causing him further physical injury and pain. As heard on the video-recording, PO Falk stated to Vasquez, "[h]ow does that feel? How does that feel?"

41.    Vasquez's phone had dropped from his hands as he was body-slammed into the car. However his cell continued recording, picking up the surrounding audio, until such time as one of the defendants picked it up off the ground and closed the video application.

42.    Defendants arrested Vasquez without probable cause or reasonable belief that he committed a crime. Defendants intentionally confined Vasquez without his consent and without justification, and Vasquez was conscious of the confinement.

43.    Even if Defendants had probable cause or reasonable suspicious sufficient to arrest Vasquez, which they did not, the force they used was objectively unreasonable given the circumstances, particularly given that Vasquez, who was unarmed and defenseless and was not resisting, was pinned against a car by two armed police officers.

44.    Despite the fact that this was all captured on video tape, at Vasquez's criminal trial, discussed *infra*, PO Falk lied under oath and committed perjury, denying Vasquez was thrown against a car or that he sustained any physical injuries during the arrest process. PO Falk also intentionally lied to Judge Brantley, stating in sum and substance, that Vasquez displayed no signs of injury or discomfort and that he never requested medical attention.

45.    Vasquez was walked to the driver's side rear door of PO Falk's squad car, while his hands were cuffed behind his back and he was moaning in pain. PO Falk and PO Wade opened the squad car door, and before placing Vasquez in the rear seat, they told him to "shut the fuck up" and struck him in the abdomen, either with their fists or with another hard object. Despite the fact that Vasquez was handcuffed and defenseless, Defendants intentionally assaulted him and used force against him that was objectively unreasonable.

46.    Defendants' use of force in each instance, as described above, was in direct violation of the policies and procedures of the Hempstead Police Department, the laws of the State of New York, and the New York State and United States Constitutions.

47.    Only after Vasquez was placed in the squad car did an ambulance arrive at the scene to treat Garcia. Despite that fact, PO Falk fabricated a false accusatory information which was filed against Vasquez, claiming that Vasquez, who was handcuffed in the rear of PO Falk's patrol car before medical personnel arrived, violated Hempstead Village code 95(f), in part, because he interfered with ambulance personnel's attempts to render aid to Garcia. *See* Exhibit B.

48.    Once Vasquez was in their custody, Defendants were responsible for his health, safety, and welfare, and they had an affirmative duty to provide him with medical attention. However they failed to do so.

49.    With the passage of time, and Vasquez's body slowly poisoning itself due to his ruptured colon, Vasquez's medical condition deteriorated. Since Vasquez was first placed in PO Falk's squad car, Vasquez repeatedly requested medical attention and to be brought to a hospital, from each of the individually-named Defendants. Despite the fact that Vasquez was crying from the time of his arrest, physically displayed obvious signs of serious physical injury, and repeatedly requested medical attention, including the need to be brought to a hospital, no Defendant ever attempted to get Vasquez any medical care.

50.    Vasquez told Defendants that he was in extreme pain and needed to use the restroom. He described a common feeling associated with a ruptured colon—that if he used the bathroom the pain would subside. Vasquez was escorted to the bathroom inside the nearby Dunkin Donuts on two occasions, once by PO Falk, PO Wade, and PO Troy, and the second time by PO Drew and PO Troy. Despite trying, he could not relieve himself.

51.    Despite Vasquez's requests for medical care, and despite the fact that the ambulance personnel were present at the scene and could have easily examined Vasquez, Defendants did not obtain any medical care for him. Defendants acted intentionally and/or with deliberate indifference to Vasquez's medical needs.

52.   Defendants' failure to provide Vasquez, who was in obvious medical distress, with medical attention, was in direct violation of the policies and procedures of the Hempstead Police Department, the laws of the State of New York, and the New York State and United States Constitutions.

53.   In order to avoid others detecting the fact that PO Falk and PO Wade severely injured Vasquez through the use of excessive force during an arrest that lacked probable cause in the first instance, and the fact that no Defendants interceded on Vasquez's behalf, Defendants released Vasquez from their custody with a desk appearance ticket, directly from the scene of arrest.

54.   To accomplish this goal, PO Falk fabricated false evidence by preparing a desk appearance ticket falsely accusing Vasquez of Disorderly Conduct, in violation of Section 95 of the Incorporated Village of Hempstead Village Code. *See* Exhibit C.

55.   Vasquez lived 0.9 of a mile from the scene of arrest. Defendants realized however that Vasquez was unable to walk any meaningful distance without assistance, given his obvious physical condition. Therefore PO Falk and/or the other Defendants acting under PO Falk's directions, placed Vasquez in a cab at the scene and admonished the cab driver to take Vasquez home, and absolutely nowhere else, including a hospital.

56.   In this way, Defendants intentionally attempted to minimize the direct link between their interaction with Vasquez at the scene, and Vasquez's injuries.

57.   PO Falk later lied under oath during Vasquez's criminal trial, falsely testifying that there was no indication Vasquez was injured, or even in any distress, while at the scene prior to his departure. Obviously, given the severity of Vasquez's injury, and the pain levels associated with such an injury, PO Falk's representations to the Court under oath belie the objective reality of Vasquez's medical condition and highlight the absurdity of his testimony.

58.   As instructed, the cab driver drove Vasquez home, 0.9 miles from the scene. On the way home, Vasquez requested the cab driver take him directly to a hospital. However the cab driver refused, stating that PO Falk directed him to bring Vasquez home and nowhere else. After arriving at his home, Vasquez continued to ask the cab driver to take him to the hospital. Once again however, the cab driver refused, citing the police directives. The cab driver physically assisted Vasquez out of the rear of the cab, and left him standing on the side of the road outside his home.

59.   Vasquez, in tremendous pain, struggled to gain entry into his own home. Once again he attempted to use the bathroom, to no avail. Vasquez then woke Judith, and asked her to call an ambulance.

60.   After the ambulance arrived, Vasquez was transported to Winthrop University Hospital. While being triaged, doctors learned Vasquez was injured by police, and ultimately recorded the injury as an "Assault," "Traumatic Injury, Torso/Trunk." A surgical trauma team was summoned to the hospital and lifesaving emergency surgery was performed.

61.   On March 5, when Vasquez was admitted to the hospital, multiple CT scans were done and a serious bowel injury was diagnosed. Vasquez underwent emergency surgery including an exploratory laparotomy, a resection of his ileus and an appendectomy. He developed peritonitis. Vasquez was discharged on March 12, 2015, a week later. At the time of his discharge, Vasquez had significant abdominal scarring and developed an abdominal fistula. He continued his post-operative rehab with his surgeon, Dr. Gorechald. Vasquez was again admitted on March 26, 2015, with acute abdominal pain, distention along with fistulous drainage and peritonitis. Vasquez again underwent surgery on March 27, 2015, for an exploratory laparotomy and wound repair. After continued pain, drainage and distention, Vasquez underwent further surgery on March 29, 2015, for a re-exploratory laparotomy, ventral hernia repair with placement of mesh. Vasquez underwent another surgery on April 1, 2015, for evacuation of abdominal hematoma, washout along with a procedure to control bleeding. Vasquez was discharged on April 6, 2015. In all, VASQUEZ underwent four surgeries and remains partly disabled to date.

62.   On March 5, 2015, after Vasquez was driven home, PO Falk returned to the Hempstead Police Department and fabricated additional false evidence. Specifically, PO Falk prepared a Violation Complaint charging Vasquez with a violating Village Code § 95-2(F), upon which Vasquez was tried. PO Falk intentionally misstated the true facts in the To Wit clause. *See* Exhibit B.

63.   The To Wit clause, sworn to by PO Falk, states the following:

> At the above mentioned time, date, and place of occurrence [4 AM, March 5, 2015, 9 Front St., Hempstead, NY], the defendant, Antonio Alvarenga-Vasquez, interfered with the deponent, numerous other officers, and emergency ambulance personnel, while trying to assist and aided at location. The deponent and other officers directed the defendant to disperse from the area numerous times. The defendant while highly intoxicated became belligerent and flailed arms at officers before taken into custody. The defendant was issued a summons for his actions.

*Id.*

64.   PO Falk swore to the truth of these statements under penalty of perjury, despite knowing that they were materially false. PO Falk likewise prepared other false police reports and forwarded these documents to prosecutors and to the Court.

65.   PO Falk forwarded the fabricated evidence to prosecutors and to the Court, knowing that they would be relied upon in prosecuting Vasquez, in violation of Vasquez's due process rights and right to a fair trial.

66.   By issuing Vasquez a summons and swearing out a Violation Complaint against him, PO Falk initiated a criminal proceeding against Vasquez. PO Falk acted with malice as he knew that there was no probable cause or reasonable suspicious to charge Vasquez with Disorderly Conduct in violation of § 95-2 (F) of the Hempstead Village Code, and he knew that the allegations in the Violation Complaint were fabricated.

67.    After being issued the desk appearance ticket, Vasquez was required to make numerous court appearances to defend against the false charge, including March 15, 2015, March 25, 2015, April 29, 2015, June 3, 2015, July 15, 2015, August 16, 2015, November 18, 2015, January 6, 2016, February 3, 2016, March 2, 2016, March 16, 2016, April 6, 2016, May 4, 2016, May, 6, 2016, May 13, 2016, and May 17, 2016. The criminal prosecution is still pending, and Vasquez will be required to make additional court appearances.

68.    The criminal trial against Vasquez started on May 4, 2016, in the Hempstead Village Court, before the Honorable Ayesha K. Brantley. The trial was continued on May 6, May 13, and May 17, 2016. PO Falk was the People's sole witness against Vasquez.

69.    At trial, PO Falk testified that he met with the prosecutors prior to trial and reviewed the Summons and Violation Complaint, which were both introduced in evidence against Vasquez as People's Exhibits A and B (Exhibits C and B, respectively, annexed hereto).

70.    PO Falk also testified that he reviewed videotapes with the prosecutor prior to trial. Vasquez's defense counsel disclosed those videotapes to the People weeks prior to the start of trial, and the prosecutor consented to their introduction into evidence. The videotapes were received in evidence as Defendant's Exhibits 2A and 2B. Exhibit 2A was a videotape recovered from a store surveillance system within the Strip Mall at 9 Front Street. Exhibit 2B was video footage from Vasquez's cell phone, described above.

71.    Exhibit 2A clearly depicts Vasquez at the scene for approximately 15 minutes prior to his arrest, never once interfering with the "deponent, numerous other officers, and emergency ambulance personnel, while trying to assist an aided at location." *See* Exhibit B.  In fact the ambulance did not arrive until *after* Vasquez was arrested and in police custody. In addition, the exhibit depicts PO Falk and PO Wade violently body-slamming Vasquez into a parked car with such force that the car shook.

72.    Exhibit 2B clearly depicts Vasquez filming the bouncers who were speaking to PO Falk, but never depicts Vasquez interfering with "deponent, numerous other officers, and emergency ambulance personnel, while trying to assist an aided at location." *See* Exhibit B.  Additionally, Exhibit 2B captures Defendants on audio saying to Vasquez as the pushed him against the parked car while Vasquez was moaning in agony, "[h]ow does that feel? How does that feel?" Exhibit 2B unequivocally establishes that Defendants injured Vasquez while they unlawfully arrested him, by using unreasonable and excessive force when they picked him up and threw him into a parked car and thereafter continued to intentional injure Vasquez.

73.    Despite this video evidence, PO Falk lied under oath at trial, testifying that he never observed Vasquez strike any objects during the arrest process, and that Vasquez was never thrown against a car by him or his colleagues during the arrest process. PO Falk went on to misrepresent that Vasquez never displayed any signs of physical injury, pain, or discomfort post arrest. PO Falk also intentionally testified falsely that Vasquez never requested any medical attention from him or his colleagues while in PO Falk's presence.

9

74. The video images captured on Exhibits 2A and 2B directly contradict PO Falk's testimony. The videotapes prove that PO Falk fabricated evidence against Vasquez, which he thereafter forwarded to prosecutors and to the Court, knowing that the prosecutors and the Court would rely upon this false evidence.

75. PO Falk's false testimony at trial further demonstrates his malicious intent in arresting and prosecuting Vasquez.

76. The People rested on May 17, 2016. Thereafter, defense counsel moved to dismiss the charge against Vasquez given that the People failed to meet their burden. Judge Brantley reserved judgment, and the case was adjourned until July 14, 2016.

77. Should the charge against Vasquez be dismissed at this procedural posture, at the close of Vasquez's case, or at any other point in time, or should Vasquez receive a favorable termination through any other means, Plaintiff is placing Defendants on notice that he will move to supplement his Complaint to assert malicious prosecution claims pursuant to 42 U.S.C. § 1983 and New York State common law.

78. As a direct and proximate result of Defendants' actions, Vasquez was falsely arrested, imprisoned, and prosecuted, and Vasquez suffered, and continues to suffer, physical pain and anguish, emotional distress, and lost employment opportunities and earnings.

## CAUSES OF ACTION

### ONE
### 42 U.S.C. § 1983 – Unreasonable and Excessive Force

79. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-78 as though fully set forth herein.

80. Defendants, acting under color of law, used excessive force against Vasquez which was objectively unreasonable under the circumstances.

81. Defendants, acting under color of law, violated Vasquez's right to be free from unreasonable and excessive physical force, in violation of the United States and New York State Constitutions and laws.

### TWO
### 42 U.S.C. § 1983 – False Arrest

82. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-81 as though fully set forth herein.

83. Defendants, acting under color of law, arrested Vasquez despite the fact that there was no

10

probable cause or reasonable suspicion to believe he committed a crime or that he violated the Village Code of the Village of Hempstead.

84.   Defendants, acting under color of law, violated Vasquez's right to be free from false arrest, in violation of the United States and New York State Constitutions and laws.

## THREE
### 42 U.S.C. § 1983 – False Imprisonment

85.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-84 as though fully set forth herein.

86.   Defendants, acting under color of law, intentionally confined Vasquez without his consent and without justification, and Vasquez was conscious of the confinement.

87.   Defendants, acting under color of law, violated Vasquez's right to be free from false imprisonment, in violation of the United States and New York State Constitutions and laws.

## FOUR
### 42 U.S.C. § 1983 – Denial of Medical Treatment/
### Unnecessary and Wanton Infliction of Pain

88.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-87 as though fully set forth herein.

89.   Defendants, acting under color of law, intentionally and in deliberate indifference to Vasquez's medical needs, refused to prior Vasquez with medical care, and delayed Vasquez in ultimately obtaining necessary medical care.

90.   Defendants, acting under color of law, violated Vasquez's right to adequate medical treatment, in violation of the United States and New York State Constitutions and law.

91.   Defendants, acting under color of law, inflicted unnecessary and wanton pain to Vasquez due to their intentional conduct and/or deliberate indifference to Vasquez's medical needs by denying him adequate medical care despite his continuous pleas to obtain such care, in violation of the United States and New York State Constitutions and laws

## FIVE
### 42 U.S.C. § 1983 – Fabrication of Evidence/Due Process/Fair Trial

92.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-91 as though fully set forth herein.

93.   Defendants, acting under color of law, created false evidence and information, which was likely to influence a jury's decision, as well as that of a judge acting as a trier of fact.

94.   Defendants, acting under color of law, forwarded the false evidence and information to prosecutors, knowing the false evidence and information would be relied upon.

95.   The Court, acting as a trier of fact, relied upon the false evidence and information.

96.   Defendants, acting under color of law, fabricated evidence in violation of Vasquez's Due Process rights and right to a fair trial.

97.   Vasquez was also deprived of his liberty due to the false evidence and information by being required to make numerous court appearances to defend against the false charge..

## SIX
## 42 U.S.C. § 1983 – Failure to Intercede

98.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-97 as though fully set forth herein.

99.   The rules governing the actions of police officers impose an affirmative duty to intercede and prevent crimes and other misconduct committed by other police officers.

100.   The rules governing the actions of police officers impose an affirmative duty to intercede on behalf of citizens when it is known that excessive force has been used.

101.   The rules governing the actions of police officers impose an affirmative duty to intercede on behalf of citizens whose constitutional rights are being violated in the presence of other police officers.

102.   The rules governing the actions of police officers impose an affirmative duty to intercede if medical care is being delayed or denied to a detainee who is suffering from an illness or injury.

103.   Defendants, acting under color of law, violated Vasquez's constitutional and statutory rights by their individual failures to intercede on his behalf, to protect his clearly established constitutional and statutory rights, in violation of the United States and New York State Constitutions and laws.

## SEVEN
## Pendent State Claim – Assault and Battery

104.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-103 as though fully set forth herein.

105. Defendants, acting under color of law, used excessive force against Vasquez which was objectively unreasonable under the circumstances.

106. Defendants, acting under color of law, unlawfully assaulted and battered Vasquez.

## EIGHT
### Pendent State Claim – False Arrest

107. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-106 as though fully set forth herein.

108. Defendants, acting under color of law, arrested Vasquez despite the fact that there was no probable cause or reasonable suspicion to believe he committed a crime or that he violated the Village Code of the Village of Hempstead.

109. Defendants, acting under color of law, violated Vasquez's right to be free from false arrest, in violation of the United States and New York State Constitutions and laws

## NINE
### Pendent State Claim – False Imprisonment

110. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-109 as though fully set forth herein.

111. Defendants, acting under color of law, intentionally confined Vasquez without his consent and without justification, and Vasquez was conscious of the confinement.

112. Defendants, acting under color of law, violated Vasquez's right to be free from false imprisonment, in violation of the United States and New York State Constitutions and laws

## TEN
### Pendent State Claim – Respondeat Superior/Vicarious Liability

113. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-112 as though fully set forth herein.

114. Defendants were at all times acting under color of State law and within the scope of their employment when they violated Vasquez's constitutional rights and committed the various torts against him, as outline above.

115. As their employer, the Village of Hempstead is therefore vicariously liable for Defendants actions under the doctrine of respondeat superior.

**WHEREFORE**, Plaintiff requests the following relief jointly and severally as against all the defendants:

1. A trial by jury on all issues;

2. An award of compensatory damages in an amount to be determined at trial;

3. An award of punitive damages in an amount to be determined at trial;

4. Disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief as this Court may deem just and proper.

Dated: Mineola, New York
      May 31, 2016

Respectfully submitted,

The Law Office of Anthony M. Grandinette
*Co-counsel for Plaintiff*
114 Old Country Road, Suite 420
Mineola, New York 11501
(516) 877-2889

By:                                     
                        Anthony M. Grandinette, Esq.

14

EXHIBIT A

```
-------------------------------------------------------------------------------X
```
In the Matter of the Claim of ABEL ANTONIO ALVARENGA
VASQUEZ,

                                                                 **NOTICE OF**

         - against -                                                   **CLAIM**

THE INC. VILLAGE OF HEMPSTEAD, HEMPSTEAD POLICE
DEPARTMENT, POLICE OFFICER WILLIAM M. FALK AND
POLICE OFFICERS JOHN AND JANE DOES 1-10.
```
-------------------------------------------------------------------------------X
```
To:   **Village Clerk**
       Incorporated Village of Hempstead
       99 Nichols Court
       Hempstead, NY 11550

**PLEASE TAKE NOTICE** that Claimant, **ANTONIO A. ALVARENGA VASQUEZ,** hereby
makes claim and demand against you as follows:

1.  **The name and post office address of Claimant and Claimant's attorneys:**

| **CLAIMANT** | **CLAIMANT'S ATTORNEYS** |
|---|---|
| **ABEL A. ALVARENGA VASQUEZ**<br>19 Garden City Blvd<br>West Hempstead, NY 11552 | **Anthony M. Grandinette, Esq.**<br>The Law Office of Anthony M. Grandinette<br>114 Old Country Road, Suite 420<br>Mineola, New York 11501 |
| | **John A. Mullan, Esq.**<br>The Law Office of John Andrew Mullan, PC<br>141 East Main Street<br>Huntington, NY 11743 |

2.  **The nature of the claims:**

      Claimant brings claims against the above-listed respondents due to their actions which
resulted in Claimant being unlawfully searched and his property seized, falsely arrested and
charged with criminal activity, falsely imprisoned, and maliciously prosecuted. Claimant further
brings claims for abuse of process, fabrication of documents and evidence, right to due process,
cruel and unusual treatment, excessive use of force, denial of medical care and treatment, and for
intentional infliction of emotional distress. Claimant also brings claims for supervisory liability,
and respondeat superior against the Incorporated Village of Hempstead and the Hempstead
Police Department for the acts of its agents and employees including but not limited to Police
Officer FALK, and Hempstead Police Officers John and Jane Does 1-5.

# CERTIFIED TRANSCRIPT

Page 1

1

2        - - - - - - - - - - - - - - - - - - - -x

3        In the Matter of the Claim of ABEL
         ANTONIO ALVARENGA VASQUEZ,

4

5                              Claimant,

6

7            -against-

8

         THE INC. VILLAGE OF HEMPSTEAD, HEMPSTEAD
9        POLICE DEPARTMENT, POLICE OFFICER WILLIAM
         M. FALK and POLICE OFFICERS JOHN AND JANE
10       DOES 1-10.

11

12       - - - - - - - - - - - - - - - - - - - -x

13                             99 Nichols Court
                               Hempstead, New York

14
                               July 2, 2015
15                             1:34 p.m.

16

17           EXAMINATION UNDER OATH of ABEL ANTONIO

18       ALVARENGA VASQUEZ, held at the above time

19       and place, taken before Diane McDonald, a

20       Shorthand Reporter and Notary Public of

21       the State of New York, pursuant to the

22       provisions of General Municipal Law 50H.

23

24

25                    *       *       *

```
 1
 2    APPEARANCES:
 3
         LAW OFFICE OF JOHN A. MULLAN, PC
 4       Attorney for Claimant
             141 East Main Street
 5           Huntington, New York 11741
 6       BY:  JOHN A. MULLAN, ESQ.
 7
 8
 9
10
         VILLAGE OF HEMPSTEAD ATTORNEY'S OFFICE
11       Attorney for Respondents
             99 Nichols Court
12           Hempstead, New York 11550
13       BY:  MS. DEBRA URBANO-DISALVO, ESQ.
14
15
         ALSO PRESENT:  ROSA PEREZ,
16                      SPANISH INTERPRETER
17
                     *       *       *
18
19
20
21
22
23
24
25
```

# EXHIBIT B

## VIOLATION COMPLAINT

:XX-00040-15          Police Serial No: _____

icket:31827

ber....:XX-00040-15

in Custody from: 04:00 March 05, 2015          to

Blotter/CC No.: _____

Return Date...: 03/25/2015

Court Docket No.: _____

### HEMPSTEAD VILLAGE COURT
### INCORPORATED VILLAGE OF HEMPSTEAD, NEW YORK
### THE PEOPLE OF THE STATE OF NEW YORK
#### against

ANTONIO ALVERENGA VASQUEZ  (36)

19 GARDEN CITY BLVD

WEST HEMPSTEAD, NY 11552-

12/10/1978

STATE OF NEW YORK$^{SS}$
COUNTY OF NASSAU

PO WILLIAM M FALK, Shield 1212, being duly sworn, deposes and says that he
is a member of the HEMPSTEAD POLICE DEPARTMENT, County of NASSAU, State of
New York and that on the  5 day of March, 2015, at about 4:00 AM at 9
FRONT ST HEMPSTEAD in the County of NASSAU, State of New York.

#### ANTONIO ALVERENGA VASQUEZ

3E
N
X
ION

THE DEFENDANT DID VIOLATE SECTION 95-2 (F) OF THE CODE OF ORDINANCE OF THE
INCORPORATED VILLAGE OF HEMPSTEAD, IN THAT AT THE TIME AND PLACE AFORESAID,
THE DEFENDANT DID COMMIT AND WAS GUILTY OF DISORDERLY CONDUCT WHEN WITH
INTENT TO CAUSE PUBLIC INCONVENIENCE, ANNOYANCE, OR ALARM, OR RECKLESSLY
CREATING A RISK THEREOF, SAID DEFENDANT CONGREGATED WITH OTHER PERSONS IN A
PUBLIC PLACE AND REFUSED TO COMPLY WITH A LAWFUL ORDER OF THE POLICE TO
DISPERSE, TO WIT: At the above mentioned time, date, and place of
occurrence, the defendant, Antonio Alvarenga-Vasquez, interfered with the
deponent, numerous other officers, and emergency ambulance personnel, while
trying to assist an aided at location. The deponent and other officers
directed the defendant to disperse from the area numerous times. The
defendant while highly intoxicated became belligerent and flailed arms at
officers before taken into custody. The defendant was issued a summons for
his actions.

red By
ALK

All of which was in violation of the law.

e foregoing is based upon personal knowledge of affirmant. WHEREFORE
ponent prays that the herein defendant be dealt with as the law directs.

3-5-15

I have read this information and
understand that any false statements
made therein are punishable as a
Class "A" Misdemeanor pursuant to
Section 210.45 of the Penal Law.

Sworn to before me this
5 day of March, 2015

_____ or _____ days in the Nassau
Correctional Center.

_____
Village Justice

E.Lbit "B"

EXHIBIT C

**31827**

INDEX NO. *1.209*

Serial No. *VC-*

POLICE DEPARTMENT
INC. VILLAGE OF HEMPSTEAD
NEW YORK

**APPEARANCE TICKET**

Arrest No. *XX-00048*

Date *3-5-15*

### THE PEOPLE OF THE STATE OF NEW YORK vs.

Name: *Alvarenga Vasquez, Antonio*

Address: *19 Garden City Blvd*
*West Hempstead NY 11550*

(MALE)   FEMALE   D.O.B. *12-10-78*

### YOU ARE HEREBY DIRECTED TO APPEAR AT

☐   FIRST DISTRICT COURT OF THE COUNTY OF NASSAU
99 Main Street, Hempstead, NY 11550

☒   INC. VILLAGE OF HEMPSTEAD JUSTICE COURT
99 Nichols Court, Hempstead, NY 11550

☐   Other: _____

on the *25* day of *March*, 20 *15* at *7:00 pm*
to answer a charge made against you for a violation of
Section *95-* of *VCO*
the specific offense being *Disorderly Conduct*

_____

Upon your failure to appear at the time and place herein mentioned, any money posted for pre-arraignment bail shall be forfeited to the People of the State of New York and a warrant shall be issued for your arrest and you may be charged with an additional violation of the Penal Law which upon conviction may subject you to a fine, imprisonment or both.

The serving of this Appearance Ticket is conditioned upon the posting of $ _____ Dollars, receipt of which is acknowledged by the undersigned.

*P.O.*      *Falk*      *1212*      *Kemp*
Rank      Name      Shield Number      Command

### ACKNOWLEDGMENT OF DEFENDANT:

I, the undersigned, do hereby acknowledge receipt of the above Appearance Ticket and do agree to appear as indicated above.

Signature of Defendant _____

Time *8:00*   Date *3/5/15*

White Copy, File   —   Canary Copy to Defendant   —   Pink Copy to Court

*Exhibit "A"*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

ABEL ANTONIO ALVARENGA VASQUEZ,

                                 Plaintiff,

                - against -

THE INCORPORATED VILLAGE OF HEMPSTEAD,
HEMPSTEAD POLICE OFFICERS        WILLIAM M. FALK,
ADAM WADE, MATTHEW DREW, TRACY TROY
AND JOHN DOES 1-5,

                                 Defendants.

----------------------------------------------------------------------X
**********************************************************************

### SUMMONS AND COMPLAINT

**********************************************************************

# THE LAW OFFICE OF ANTHONY M. GRANDINETTE &
# JOHN ANDREW MULLAN, P.C
## Attorneys for Plaintiffs
## 114 Old Country Road, Suite 420
## Mineola, New York 11501
## (516) 877-2889

---

TO:  Debra Urbano -Disalvo, Hemsptead Village Attorney, 99 Nichols Road, Hempstead, NY 11550

ATTORNEY(S) FOR The Incorporated Village Of Hempstead, Hempstead Police Officers William M.

Falk, Adam Wade, Matthew Drew, Tracy Troy and John Does 1-5

---

Service of a copy of the within

Dated,                                                               is hereby admitted.

SIR: PLEASE TAKE NOTICE

        ☐  NOTICE OF ENTRY
                    that the within is a (certified) true copy of a              duly entered in the office of the clerk of the within
        named court on        2012

        ☐  NOTICE OF SETTLEMENT
                  that an order            of which the within is a true copy will be presented for settlement to the
        HON.        one of the judges of the within named Court, at            on the     day of
        2012  at    A.M.